QUESTION: Is the statutory limit on claims provided in the Florida Tort Claims Act a rigid limit, or may a claimant from Dade County petition the Legislature for judgment rendered in excess of that limit or sue the employer beyond the statutory limit?
SUMMARY: Pursuant to s. 768.28, F. S., which provides generally for the waiver of the state's sovereign immunity from suits in tort, a claimant from Dade County may bring suit against Dade County or the Dade County School District to recover compensatory money damages in tort in excess of the monetary limitations prescribed in s. 768.28(5). However, except to the extent that insurance coverage is available, that part of any tort judgment obtained by a Dade County claimant against Dade County or the Dade County School District which is in excess of these statutory monetary limitations may not be paid and, to that extent, is unenforceable except upon "further act" of the Florida Legislature; and, until judicially determined otherwise, the power of the Florida Legislature to so "further act" appears limited to the extent that s. 11, Art. VIII, State Const. 1885, as carried forward by s. 6, Art. VIII, State Const. 1968, precludes the enactment of a claims bill directing such an excess to be paid from the funds of Dade County or the Dade County School District or from funds in the State Treasury due that county or school district. The following discussion is limited solely to a consideration of tort claims originating in Dade County, to claims and suits in tort for money damages against Dade County or the Dade County School District, and to the effect or impact thereon of the Dade County Home Rule Amendment to the Florida Constitution, s. 11, Art. VIII, State Const. 1885, carried forward by s. 6, Art. VIII, State Const. 1968, the Dade County Home Rule Charter, and s. 768.28, F. S., which provides generally for the waiver of the state's sovereign immunity from suit. By the enactment of s. 768.28, F. S., which became effective generally on January 1, 1975, the Florida Legislature waived the sovereign immunity of the state and its agencies and subdivisions from tort liability, but only to the extent provided therein. More specifically, s. 768.28(5) establishes monetary limitations on the tort liability of the state and its agencies and subdivisions of $50,000 per claimant and $100,000 per incident or occurrence. See also s. 768.28(5) providing that the state's liability shall not include punitive damages or interest for the period prior to judgment; and s. 768.28(10) providing that the monetary limitations do not apply to the extent an insurance policy provides coverage. However, as discussed in AGO 075-69, it is also expressly provided in s. 768.28(5) that: . . . a judgment or judgments may be claimed and rendered in excess of these amounts . . . and that portion of the judgment that exceeds these amounts may be reported to the legislature but may be paid in part or in whole only by further act of the legislature. It is clear, therefore, that s. 768.28, F. S., does not fix any rigid limit on the amount of compensatory money damages a claimant may seek to recover in a tort claim or suit against the state or its agencies or subdivisions. Thus, a claimant from Dade County may bring suit against Dade County or the Dade County School District to recover compensatory money damages in tort in excess of the monetary limitations prescribed in s. 768.28(5). However, any part of any judgment obtained by such a claimant that exceeds these statutory monetary limitations may not be paid and, to that extent, is unenforceable except upon some further valid act of the Florida Legislature. Cf. AGO 076-41 in which this office concluded that, with certain limited exceptions mentioned in that opinion, municipalities possessed no aspect of the state's immunity from tort liability upon which the state's waiver of sovereign immunity contained in s. 768.28 and the statutory limitations applicable thereto could operate. As to what would constitute a further valid act of the Florida Legislature with regard to a tort judgment obtained by a claimant from Dade County against Dade County or the Dade County School District that exceeds the monetary limitations established by s.768.28(5), F. S., there are two Florida Supreme Court decisions which affect this issue. In Dickinson v. Board of Public Instruction of Dade County, 217 So.2d 553 (Fla. 1968), the Florida Supreme Court held constitutionally invalid Ch. 67-677, Laws of Florida, a claims bill which directed payment, out of funds appropriated to the Board of Public Instruction of Dade County (and not specifically committed to a particular use) to the father of a student fatally injured while playing on the grounds of a Dade County elementary school, of the sum of $5,000 as compensation for medical expenses and other damages suffered by the father as a result of the student's fatal injury. In those portions of the Supreme Court's decision pertinent to the instant inquiry, it was first concluded that Ch. 67-677 was a local law "because it affected only Dade County and made an appropriation out of specific funds due to the schools of that county only." Then, the Supreme Court considered the Dade County Home Rule Amendment, s. 11(5), (6), and (9), Art. VIII, State Const. 1885 (carried forward by s. 6, Art. VIII, State Const. 1968), and stated as follows: As we have done on other occasions, we concur in the view that in matters which affect only Dade County, and which are not the subject of specific constitutional provisions or valid general acts pertaining to Dade County and at least one other county, the electors of Dade County may "govern themselves autonomously and differently than the people of other counties of the state." S J Transportation, Inc. v. Gordon, 176 So.2d 69
(Fla. 1965). In the cited opinion we announced the view that a reasonable construction of the constitutional scheme formulated for the government of Dade County alone suggests that the Legislature "no longer has authority to enact laws which relate only" to the affairs of Dade County. Indeed, the view which we announced in the last cited case expresses the very essence of so-called "home rule government." Consistent with this view it appears to us that in regard to matters of the nature under consideration, the people of Dade County have adequate authority through the referendum process to make provision in their Home Rule Charter for meeting moral obligations of this type. Actually, in so doing they would be following a course little different than if they were required to pursue a constitutional referendum on a local law. . . . [217 So.2d at p. 555.] Cf. AGO 074-99 in which this office opined that a special law (or local law, see s. 12(g), Art. X, State Const. 1968) relating to a single county operating under a charter adopted pursuant to s. 1(c), Art. VIII, State Const. 1968, and requiring the payment of a sum certain from county funds or from funds due the county from the State Treasury for the relief of a claimant will not become effective unless and until it is approved by the affected county's electorate. Subsequently, in Dickinson v. Bradley, 298 So.2d 352 (Fla. 1974), the Florida Supreme Court upheld the constitutional validity of another claims bill, Ch. 71-468, Laws of Florida, which provided that the State of Florida reimburse the claimant there involved for compensation lost during the period in which he was suspended from the office of Constable of the Second District of Dade County. In its decision on direct appeal, the Supreme Court quoted at length from the trial court's opinion, finding it to be "an able and accurate explanation of the law governing this case," and, accordingly, affirmed the trial court's judgment that Ch. 71-468 was constitutionally valid. In that portion of the trial court's opinion pertinent to the instant inquiry, it was stated as follows: ". . . This case is to be distinguished from the Dickinson case [Dickinson v. Board of Public Instruction of Dade County] . . . in that here there is a recognition of liability of the state for the action of state officers and bodies in the wrongful removal of plaintiff from office and thus depriving him of the emoluments of such office. In Dickinson, [supra] the act involved sought to direct the disbursal of Dade County funds for death resulting from negligence of the Dade County school system. Chap. 71-168 is not a special act in the sense of operating in a particular locality or single county even though the plaintiff was and is a county officer of Dade County. It may be reasoned that it is special in its restriction to a single person. However, any claim bill is restricted to less than the general public and its purpose is to discharge the state's moral obligation to any individual or other entity whom or which the legislature recognizes as being entitled to such. . . . [T]his act does not appropriate the funds of any locality. The act is a valid claim bill, enacted as a general law and in full harmony with other statutory provisions relating to bills of this nature. The Dade County Charter is not involved in the slightest, nor are the other constitutional provisions which have been cited by the defendant. . . ." [298 So.2d at pp. 353-354.] The trial court then construed the language of Ch. 71-468 relating to the source of the funds to compensate the claimant and concluded that "[i]t is clear that it is the state and not a particular county which is to pay the sum." 298 So.2d at p. 354. Applying these two Florida Supreme Court decisions to the instant inquiry, and until judicially determined otherwise, it would appear that when a tort judgment obtained by a claimant from Dade County against Dade County or the Dade County School District exceeds the statutory monetary limitations prescribed by s. 768.28(5), F. S., or any insurance coverage available, the Florida Legislature is constitutionally precluded from enacting a claims bill directing such excess to be paid from funds of Dade County or the Dade County School District or from funds in the State Treasury due that county or school district. See Dickinson v. Board of Public Instruction of Dade County, supra. However, if the Florida Legislature acknowledges or recognizes that there is a liability on the part of the State of Florida (as distinguished from its political subdivisions) to discharge the state's moral obligation to any individual or entity whom or which the Legislature determines is entitled to such, it may constitutionally enact a general law granting relief to a claimant from Dade County provided that the source of funds for payment of any such claims bill is limited to state funds, i.e., the state's General Revenue Fund, and not the funds of Dade County or the Dade County School District or any funds in the State Treasury due that county or school district. See Dickinson v. Bradley, supra. To the extent that the general statement made in AGO 075-69 with respect to the Florida Legislature directing a political subdivision to pay a tort judgment in excess of the monetary limitations prescribed by s. 768.28(5), F. S., differs from the conclusion reached herein (or the provisions of s. 11, Art. VIII, State Const. 1885, as carried forward by s. 6, Art. VIII, State Const. 1968), such statement is hereby modified so as to except Dade County and the Dade County School District therefrom and, to that extent, is hereby superseded.